United States District Court
Southern District of Texas
**ENTERED**
June 02, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| NOE A. FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-275 |
| | § | |
| ROMA INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION & ORDER

There are several motions pending before the Court. First, Roma Independent School District ("Roma ISD"), Leticia Garza Galvan, individually and in her official capacity as President of the Board of Trustees ("President Galvan"), Luis Garza, individually and in his official capacity as Deputy Superintendent ("Deputy Superintendent Garza"), and Carlos Guzman, individually and in his official capacity as Superintendent ("Superintendent Guzman") (collectively "Defendants") filed a motion to dismiss.[1] Second, Noe A. Flores ("Plaintiff") filed a "Motion to Strike Objections and Motion to Compel Compliance with Rule 34 and Motion to Compel Depositions."[2] Finally, Plaintiff filed a "Motion for Extension of Time to File Response to Defendants' Motion to Dismiss, Objections and Motion to Strike Evidence."[3] After duly considering the record and relevant authorities, the Court **DENIES** the motion for extension of time, **GRANTS IN PART** the motion to strike evidence, **GRANTS** the motion to dismiss, and **DENIES AS MOOT** the remaining motions.

---

[1] Dkt. No. 27.
[2] Dkt. No. 30.
[3] Dkt. No. 32.

## I.    Background

Plaintiff was a contract employee of Roma ISD, serving in the capacity of Chief of Police.[4] In November 2015, Deputy Superintendent Garza provided Plaintiff with a completed administrative investigation concerning "an alleged improper student-teacher relationship [("student-teacher relationship")]."[5] Deputy Superintendent Garza requested that Plaintiff criminally investigate and press charges against the teacher, Jackie Rodriguez ("Ms. Rodriguez").[6] During the pendency of the investigation, the Texas Education Agency ("the TEA") suspended Ms. Rodriguez, and she later resigned.[7]

In January 2016, Plaintiff assigned a Roma ISD Police Officer, Leroy Rivera ("Officer Rivera") to the case, and received assistance from Starr County District Attorney Investigator, Trinidad "Trini" Lopez ("Investigator Lopez").[8] Officer Rivera and Investigator Lopez subsequently met with the student.[9] In reviewing the investigation file, Plaintiff ultimately discovered discrepancies in the student's statements.[10] As a result, Plaintiff requested that Officer Rivera question the student to clarify the discrepancies.[11] During further questioning, "the student informed Officer Rivera that the typed statement regarding the [student-teacher] relationship was false and that he had lied about the . . . relationship with the teacher after having been pressured by [Deputy Superintendent] Garza and the Roma High School Principal, Marissa Belmontes [("Principal Belmontes")]."[12] The student admitted that he lied after hours of pressure

---

[4] Dkt. No. 26, at ¶ 4.1.
[5] *Id.* at ¶ 4.9.
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶ 4.10.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at ¶ 4.11.

from Deputy Superintendent Garza and Principal Belmontes.[13] The student later issued a handwritten statement denying the student-teacher relationship with Ms. Rodriguez.[14] After additional questioning from Investigator Lopez, the student again admitted that such a relationship was fabricated.[15] Both President Galvan and Deputy Superintendent Garza met with the student on four or five occasions following his handwritten statement.[16] On one such occasion, President Galvan and Deputy Superintendent Garza met with the student together.[17]

Eventually, Plaintiff reported the matter to the TEA.[18] Plaintiff's report to the TEA covered the "framing of [Ms.] Rodriguez"[19] and also addressed the following:

a. Payment of $98,000 to $110,000 to [President] Galvan's uncle for [the] cleaning of three ponds;

b. Purchase of decorations in the amount of $60,000 for a relative of [President] Galvan;

c. Awarding a land clearing contract to a reported Mafia cartel member;

d. Exorbitant amount of funds paid to persons and business[es] without notice  and public bidding.[20]

Subsequently, in January 2016, the TEA requested that Plaintiff submit all documentation relating to the student-teacher relationship.[21] One week after the request, at a meeting with Superintendent Guzman and Deputy Superintendent Garza, Plaintiff was told that he was prohibited from continuing his investigation—a directive of President Galvan.[22]

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 4.12.
[16] *Id.* at ¶ 4.23.
[17] *Id.*
[18] *Id.* at ¶ 4.13.
[19] *Id.* at ¶ 4.16.
[20] *Id.*
[21] *Id.*
[22] *Id.* at ¶ 4.15.

In February 2016, Superintendent Guzman issued a formal evaluation of Plaintiff, which included these comments:

"Lack of communication with ["Ms. Belmontes"] and me";

"Department needs improvement. Keep me Posted[]";

"Needs to follow directives. Inform me of major issues; Lack of Communication; Lack of Trust";

"Too many problems with student[s] at schools; Student safety issue at high school. Need to let me know"; and

"Seems to need a lot of work. I have lost trust in you. I have a lack of confidence in you as Roma ISD Chief of Police."[23]

In six out of eight categories, Plaintiff received the rating of "Needs Improvement."[24] On the same day as the formal evaluation, Superintendent Guzman issued Plaintiff a written reprimand, which, according to Plaintiff, "resurrect[ed] an improper written reprimand (among other general shortcomings like insubordination, lack of trust, ability to communicate) given to [Plaintiff] by [Deputy Superintendent] Garza, who was not [Plaintiff's] supervisor and could not issue the reprimand."[25] Two weeks later, Superintendent Guzman issued Plaintiff an additional written reprimand for failure to notify him about a school bus wreck.[26]

Throughout February, Plaintiff was asked to discuss his investigation with Superintendent Guzman on three occasions.[27] Plaintiff also had one meeting where both Superintendent Guzman and Deputy Superintendent Garza were present.[28] During that meeting,

---

[23] *Id.* at ¶ 4.17 (last alteration in original).
[24] *Id.*
[25] *Id.* at ¶ 4.18.
[26] *Id.* at ¶ 4.19.
[27] *Id.* at ¶ 4.20.
[28] *Id.* at ¶ 4.21.

"[Superintendent] Guzman at times described the pressure to terminate [Plaintiff] originated with [President] Galvan, and other times he generically referred to 'the Board.'"[29]

On March 3, 2016, Plaintiff was terminated from his position as Chief of Police.[30] Six days later, Plaintiff issued a written notice to Superintendent Guzman advising of his intent to appeal the termination.[31] Superintendent Guzman informed Plaintiff "that he could not utilize the grievance process because he was no longer a Roma [ISD] employee."[32] Plaintiff then filed a Level Two Grievance/Appeal notice.[33] Following a hearing before Deputy Superintendent Garza, Plaintiff's Level Two Grievance/Appeal was denied.[34] Thereafter, Plaintiff filed a "Level Three Notice of Appeal."[35] Under Roma ISD policy, "[i]f the [Roma ISD] Board [of Trustees] [("Board")] does not make a decision regarding the complaint by the end of the next regularly scheduled meeting, the lack of response by the Board upholds the administrative decision at Level Two."[36] The Board later held meetings, but did not consider Plaintiff's Notice of Appeal.[37]

Plaintiff's amended complaint asserts both Constitutional and state causes of action.[38] Defendants subsequently filed a motion to dismiss.

## II.   Motion for Extension of Time

As a preliminary matter, the Court will address the motion for extension of time.[39] Under Federal Rule of Civil Procedure 6(b), the Court applies the "good cause" standard to motions for extensions of time made before the deadline for the relevant act, a lenient standard compared to

---

[29] *Id.*
[30] *Id.* at ¶ 4.24.
[31] *Id.* at ¶ 4.28.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* (quoting Roma ISD policy, Personnel-Management Relations-Employee Complaints/Grievances, DGBA-Local).
[37] *Id.*
[38] *Id.* at ¶¶ 5.1–7.3.
[39] Dkt. No. 32, at ¶¶ 2.1–2.6.

the "excusable neglect" standard that applies to motions made after the deadline.[40] Since Plaintiff filed the motion for extension of time within twenty-one days after the motion to dismiss was filed, the Court will apply the more lenient "good cause" standard.[41]

Plaintiff objects to the Court ruling on the motion to dismiss and requests an extension of time to respond because "he was denied an opportunity to engage in meaningful discovery."[42] Plaintiff is unable to establish good cause to warrant an extension of time because "[a] motion to dismiss pursuant to Rule 12(b)(6) is decided solely on the pleadings; thus, the degree of discovery conducted is irrelevant to a Rule 12(b)(6) motion."[43] Since discovery is irrelevant to the Court's ruling on the motion to dismiss, Plaintiff's explanation for why additional time should be granted does not establish good cause. As a result, the Court **DENIES** the motion for extension of time.

### III.    Motion to Strike Evidence

Next, before considering the motion to dismiss, the Court must address Plaintiff's motion to strike evidence.[44] Plaintiff asserts that Defendants converted their motion to dismiss into a motion for summary judgment because it "includes factual statements which are not in any way supported by the record and of which they have not produced any evidence."[45] The general rule is that "in deciding whether to grant a motion to dismiss, a district court may not go outside the complaint."[46] However, an exception is that "a district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the

---

[40] Fed. R. Civ. P. 6(b).
[41] *See* L.R. 7.3. The motion to dismiss was filed on December 22, 2016, and the motion for extension of time was filed within twenty-one days, on January 11, 2017.
[42] Dkt. No. 32 at ¶ 2.6.
[43] *Senegal v. Jefferson Cnty.*, 1993 WL 309915, at *2 (5th Cir. 1993).
[44] Dkt. No. 32, at ¶¶ 3.1–3.2
[45] *Id.* at ¶ 2.5.
[46] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (quotation marks and citation omitted).

plaintiff's claim."[47] Additionally, the Court may take judicial notice of public documents and consider them in its analysis of the motion to dismiss without converting the motion into a motion for summary judgment.[48]

Plaintiff requests that the Court strike the following exhibits attached to the motion to dismiss:

> 1) Business Records Affidavit of [Deputy Superintendent] Garza [("Garza Affidavit")]
>
> 2) February 26, 2016 Written Reprimand [("2016 Written Reprimand")]
>
> 3) Roma ISD Safety Program[] [("Safety Program")]
>
> 4) Roma ISD Personnel Management Relations/Employee Complaints/Grievances [("Personnel Manual")]
>
> 5) Roma ISD Police Officer's Manual [("Police Officer's Manual")]
>
> 6) March 30, 2007 Term Contract [("Employment Contract")]
>
> 7) January 13, 2016 Texas Education Agency Correspondence [("TEA Correspondence").][49]

The Court will now address which of the exhibits it may properly consider.

### a.    Police Officer's Manual

The Police Officer's Manual is both referenced in the amended complaint[50] and central to Plaintiff's First Amendment claim. The Police Officer's Manual provides Plaintiff's former job responsibilities as Chief of Police with Roma ISD.[51] Those responsibilities are central to

---

[47] *Id.* (citation omitted).

[48] *Doe v. United States*, 2017 WL 1325701, at *5 (5th Cir. 2017) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. In making this determination, we may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (quotation marks omitted).

[49] Dkt. No. 32, at ¶ 3.1.

[50] Dkt. No. 26, at ¶¶ 4.8, 5.6.

[51] Dkt. No. 27-1, at p. 20.

determining whether Plaintiff's reporting to the TEA and the Starr County District Attorney's Office ("District Attorney's Office") were protected under the First Amendment.

Plaintiff objects to the Police Officer's Manual because he "has not had an opportunity to develop the factual record relating to such document through discovery, including without limitation, obtaining production and deposition testimony relating to such document[,]" and it is not dispositive.[52] Plaintiff's inability to "develop the factual record" is of no consequence because the degree of discovery completed is irrelevant to a ruling on a motion to dismiss. Additionally, Plaintiff himself specifically referenced the Police Officer's Manual in his amended complaint. Plaintiff makes no argument that the manual offered by Defendants is not that which Plaintiff referenced in his amended complaint.

### b.    Employment Contract

Plaintiff noted that his contract was renewed for ten years since the beginning of his employment with Roma ISD in August 2005.[53] Plaintiff raises causes of action for breach of contract[54] and an alleged due process violation.[55] As more fully discussed below, the terms of Plaintiff's employment agreement with Roma ISD are central to resolving Plaintiff's claims. In his amended complaint, Plaintiff does not specifically reference the Employment Contract, which was for a twelve month term starting in 2007.[56] Ultimately, none of the parties have provided any contractual agreement between Plaintiff and Roma ISD at the time of Plaintiff's termination in 2016.

---

[52] Dkt. No. 32, at ¶ 3.1.
[53] Dkt. No. 26, at ¶¶ 4.1–4.3.
[54] *Id.* at ¶¶ 7.1–7.3.
[55] *Id.* at ¶¶ 5.16–5.22.
[56] Dkt. No. 27-1, at p. 65 ("[Roma ISD] agrees to employ [Plaintiff] on a 12 month basis for the 2007[–]2009 school year(s)[.]").

One argument advanced by Plaintiff to strike the Employment Contract is that the "document is incomplete and not the best evidence, particularly given Roma [ISD's] annual accept[ance] of such contract[.]"[57] Plaintiff's amended complaint does not explicitly provide the pertinent language of a contract that may have existed in 2016. Indeed, Plaintiff merely notes that his contract was annually renewed[58] and that Plaintiff's termination was without good cause, thus establishing a breach of contract claim.[59] Since the terms of a contractual agreement at the time of Plaintiff's termination control this Court's analysis on the breach of contract and due process causes of action, the Employment Agreement, which is from 2007 and only for a twelve month term, is not central to any of Plaintiff's claims. As a result, the Court will grant Plaintiff's motion to strike and not consider the Employment Contract offered by Defendants.

### c.    Remaining Exhibits

The remaining exhibits, whether referenced in the amended complaint or not, are not central to the Court's analysis of Plaintiff's claims. As this Court will discuss, Plaintiff's claims fail to survive the Rule 12(b)(6) legal standard. Accordingly, consideration of the Garza Affidavit, 2016 Written Reprimand, Safety Program, Personnel Manual, or TEA Correspondence would not alter the Court's ruling, and thus the Court will disregard them.

Accordingly, the Court **GRANTS IN PART** the motion to strike evidence. The Garza Affidavit,[60] 2016 Written Reprimand,[61] Safety Program,[62] Personnel Manual,[63] Employment Contract,[64] and TEA Correspondence[65] are hereby **STRIKEN.**

---

[57] Dkt. No. 26, at ¶ 3.1.
[58] *Id.* at ¶ 4.2.
[59] *Id.* at ¶ 7.2.
[60] Dkt. No. 27-1, at pp. 3–4.
[61] *Id.* at pp. 5–6.
[62] *Id.* at pp. 7–9.
[63] *Id.* at pp. 10–16.
[64] *Id.* at p. 65.
[65] *Id.* at pp. 66–67.

### IV.    Motion to Dismiss

Defendants' motion to dismiss argues that Plaintiff's claims are subject to dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### a.    Rule 12(b)(1) Legal Standard

Pursuant to Rule 12(b)(1), the Court must dismiss a civil action for lack of subject matter jurisdiction.[66] The burden of establishing federal jurisdiction rests on the party seeking the federal forum.[67] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[68] When conducting a Rule 12(b)(1) analysis, the Court may consider disputed facts and should grant the motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[69] The Court can determine a lack of subject matter jurisdiction by looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[70] Since the Court is not obligated to accept a plaintiff's complaint as true, the Court may consider extrinsic evidence when assessing whether it has jurisdiction.

### b.    Rule 12(b)(6) Legal Standard

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[71] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a

---

[66] Fed. R. Civ. P. 12(b)(1).
[67] *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[68] *Id.* (quotation marks and citations omitted).
[69] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[70] *A.A. v. Hous. Indep. Sch. Dist.*, 2011 WL 181356, at *1 (S.D. Tex. Jan. 19, 2011).
[71] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 2015 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)) *cert. denied*, 552 U.S. 1182 (2008) (quotation marks omitted).

cause of action."[72] The Court regards all such well-pleaded facts as true and views them in the light most favorable to the plaintiff.[73] Considered in that manner, factual allegations must raise a right of relief above the speculative level.[74]

Pursuant to Supreme Court precedent set forth in *Ashcroft v. Iqbal*,[75] the Court first disregards from its analysis any conclusory allegations as not entitled to the assumption of truth.[76] The Court then undertakes the "context-specific" task of determining whether well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[77] The "plausibility" standard requires the complaint to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[78] As the Supreme Court recently clarified, the plausibility standard concerns the factual allegations of a complaint; the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."[79]

## V.    Discussion

Plaintiff alleges violations of the First Amendment, Fourteenth Amendment, and Chapter 554 of the Texas Government Code ("Chapter 544"), as well as breach of contract.[80]

### a.    First Amendment Free Speech

Plaintiff argues that he was terminated from his employment in retaliation for reporting to the TEA and the District Attorney's Office.[81] The amended complaint is clear that Plaintiff

---

[72] *Twombly*, 550 U.S. at 555.
[73] *Id.*
[74] *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).
[75] 556 U.S. 662 (2009).
[76] *See id.* at 678–79.
[77] *See id.* at 679–80.
[78] *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).
[79] *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014).
[80] Dkt. No. 26, at ¶¶ 5.1–7.3.

initially reported the student-teacher relationship to the TEA,[82] and subsequently reported public corruption to that agency.[83] It is less clear when exactly Plaintiff reported to the District Attorney's Office, but Plaintiff does allege within his First Amendment cause of action that his "report[ing] to external agencies, including [the] TEA and the [] District Attorney's [O]ffice, is speech implicating the performance of elected officials[,] . . . and therefore, involves matters of public concern."[84] Plaintiff makes clear that he requested the assistance of Investigator Lopez, an investigator with the Starr County District Attorney's Office, as he investigated the student-teacher relationship.[85] As such, it appears that Plaintiff was both working and communicating with the District Attorney's Office throughout his investigation. The Court will now consider whether any communications to either agency are afforded First Amendment protection.

As the Fifth Circuit has summarized, "[t]o establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[86] Importantly, as to the second element, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[87]

---

[81] *Id.* at ¶¶ 5.1–5.14.
[82] *Id.* at ¶¶ 4.13–4.15.
[83] *Id.* at ¶ 4.16.
[84] *Id.* at ¶ 5.2.
[85] *Id.* at ¶ 4.10.
[86] *Nixon v. City of Hous.*, 511 F.3d 494, 497 (5th Cir. 2007) (internal citations omitted).
[87] *Hurst v. Lee Cty., Miss.*, 764 F.3d 480, 484 (5th Cir. 2014).

Plaintiff alleges that he suffered an adverse employment action because he was terminated for reporting public corruption, an alleged matter of public concern.[88] Since termination from employment constitutes an adverse employment action,[89] Plaintiff has satisfied the first element for establishing a claim for employment retaliation related to speech. Concerning the second element, Plaintiff argues that his reporting "is speech implicating the performance of elected officials . . . and therefore, involves matters of public concern."[90] More specifically, Plaintiff asserts that his reporting involves matters of public concern because he "raise[d] issues of contracts to family members of [Board President] Galvan for work performed under dubious circumstances and derails Defendants' efforts [to] falsely press[] charges against a teacher for having engaged in a sexual relationship with a student."[91] Plaintiff thus contends that his disclosure of misbehavior by public officials is protected.[92]

In their motion to dismiss, Defendants argue that Plaintiff's communications are not protected because Plaintiff was not speaking as a citizen, but rather pursuant to his official duties as Chief of Police.[93] Plaintiff, while recognizing the distinct prongs of the second element, nonetheless conflates the two. To be clear, in regard to the second element, the Court must first determine whether the Plaintiff/employee's speech was pursuant to his official job duties. If so, "[s]uch '[j]ob-required speech is not protected,' even when it irrefutably addresses a matter of public concern."[94] As such, even though public corruption is always a matter of public concern,[95] speech about public corruption made pursuant to official job duties is not protected.[96]

---

[88] Dkt. No. 26, at ¶¶ 5.1–5.14.
[89] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282–83 (5th Cir. 2004).
[90] Dkt. No. 26, at ¶ 5.2.
[91] *Id.*
[92] *Id.* at ¶ 5.4.
[93] Dkt. No. 27, at pp. 23–32.
[94] *Anderson v. Valdez*, 845 F.3d 580, 592 (5th Cir. 2016) (second alteration in original).

In determining whether Plaintiff's speech was pursuant to his job duties, Plaintiff's job title carries much weight. Plaintiff, as Chief of Police, was authorized to investigate criminal matters. In particular, Section 2 of the Police Officer's Manual, entitled "Duty Responsibility," provides in pertinent part as follows:

D.      Duty to Make Report

It will be the responsibility of all officers to make a proper report of all offenses investigated, observed, or reported.

E.      Withholding Information Prohibited

No member of the Department shall intentionally withhold information relating in any way to actual or suspected criminal activity when such information might prevent the commission of a criminal act, facilitate an ongoing investigation, or expedite the apprehension of an offender.[97]

The Court will address both the reporting of the student-teacher relationship and public corruption to determine whether Plaintiff was reporting as a private citizen or pursuant to his official job duties.

i.      *Student-Teacher Relationship*

There is no dispute that Deputy Superintendent Garza requested that Plaintiff investigate the student-teacher relationship. Plaintiff ultimately commenced an investigation while serving as Chief of Police. Pursuant to the Police Officer's Manual, it was Plaintiff's responsibility to report on the investigated offense of the student-teacher relationship. As Defendants correctly note, the Texas Penal Code makes it unlawful for an employee of a public school to "engage[] in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in

---

[95] *Id.* at 599 ("Speech which discloses any evidence of *corruption*, impropriety, or other malfeasance on the part of . . . officials, in terms of content, clearly concerns matters of public import.") (emphasis added) (quotation marks and citation omitted).

[96] *Gibson v. Kilpatrick*, 773 F.3d 661, 671–72 (5th Cir. 2014) ("The fact that what was being reported in this case was public corruption does not change the result—*Garcetti*'s rule is a broad one, and it must be applied even where it may lead to a potentially distasteful result in an individual case. As such, any reprimand based on Gibson's reports to the OSA cannot be said to violate his clearly established constitutional rights.").

[97] Dkt. No. 27-1, at pp. 20–21.

[the] school at which the employee works[.]"[98] Since the student-teacher relationship was allegedly sexual in nature,[99] Plaintiff was investigating whether Ms. Rodriguez committed a criminal offense during her employment with Roma ISD.

To conduct a full criminal investigation and press charges as requested by Deputy Superintendent Garza,[100] Plaintiff, as Chief of Police, needed to correspond with the District Attorney's Office because of its prosecutorial authority. Furthermore, Plaintiff explains that he requested the assistance of Investigator Lopez, an investigator with the Starr County District Attorney's Office, as he investigated the student-teacher relationship.[101] The Court finds that Plaintiff was approached to conduct a criminal investigation in his position as Chief of Police, was required to report on investigated offenses, and was actively working with the District Attorney's Office from the beginning of his investigation. Plaintiff's communications with the District Attorney's Office concerning the student-teacher relationship were not only made in furtherance of Deputy Superintendent Garza's request to conduct a criminal investigation, but were also required pursuant to Plaintiff's job duties as Chief of Police.

The TEA reporting differs insofar as that specific agency cannot criminally prosecute. Plaintiff acknowledges that Roma ISD administrators previously reported the student-teacher relationship to the TEA before Plaintiff started his investigation.[102] Chapter 249 of the Texas Education Code authorizes the TEA to "obtain and investigate information concerning alleged improper conduct by an educator, applicant, examinee, or other person subject to this chapter that would warrant the State Board for Educator Certification (SBEC) denying relief to or taking

---

[98] Tex. Penal Code § 21.12(a)(1). The Court notes that although Texas Penal Code § 21.12(a)(3) was ruled unconstitutional in *Collins v. State*, 479 S.W.3d 533 (Tex. Ct. App.—Eastland 2015), there is no precedent suggesting that § 21.12(a)(1) is no longer valid law.
[99] Dkt. No. 26, at ¶ 4.15 (clarifying that Plaintiff was investigating an "alleged inappropriate sexual relationship").
[100] *Id.* at ¶ 4.09.
[101] *Id.* at ¶ 4.10.
[102] *Id.* at ¶ 4.09.

disciplinary action against the person or certificate."[103] Chapter 249 further provides that "soliciting or engaging in a romantic or sexual relationship with any student or minor, is considered conduct that may result in permanent revocation of an educator's certificate."[104]

As previously noted, Plaintiff had a duty to report all investigated offenses. He reported to the TEA, an agency that is authorized to discipline an educator for improper conduct. The alleged sexual relationship, if true, constitutes a criminal act by Ms. Rodriguez and is the type of relationship that triggers educator discipline under the Texas Education Code. Following the initial report to the TEA, Ms. Rodriguez was suspended from her employment.[105] The TEA later requested that Plaintiff "submit all documentation pertaining to the [student-teacher] relationship."[106] Since Plaintiff was required to report offenses, and because the TEA is statutorily authorized to discipline a teacher for sexual activity with a student, Plaintiff was not reporting as a citizen, but rather through his position as Chief of Police. Thus, pursuant to his official job duties, Plaintiff was required to not only report to the District Attorney's Office regarding the criminal accusations against Ms. Rodriguez, but to also communicate with the TEA so the agency could investigate and potentially discipline her.

ii.    *Public Corruption*

Plaintiff's reporting of public corruption involved suspect payments to family members of President Galvan, the award of a land clearing contract to a reported Mafia cartel member, and other misappropriation of funds.[107] Beyond this, Plaintiff offers few specifics about this reporting. In addition to Plaintiff's job duties already described herein, the Texas Education Code provides that "[a] school district police officer shall perform law enforcement duties for the

---

[103] Tex. Admin. Code § 249.14(a).
[104] *Id.* § 249.5(b)(2)(F).
[105] Dkt. No. 26, at ¶ 4.9.
[106] *Id.* at ¶ 4.13.
[107] *Id.* at ¶ 4.16.

school district[, which] must include protecting: (1) the safety and welfare of any person in the jurisdiction of the peace officer; and (2) the property of the school district."[108] Thus, the Texas Education Code mandates that one of Plaintiff's job duties was to protect the property of the school district. Plaintiff discovered suspected public corruption whereby the school district wrongfully used school district property, specifically its funds.

Although public corruption is always a matter of public concern, Plaintiff's report of public corruption is only protected if he was speaking as a citizen. Here, the Court finds that Plaintiff's reporting of public corruption to the TEA is not protected because he was speaking pursuant to his official job duties. Plaintiff, as Chief of Police, was employed to investigate offenses, and his duties necessarily required disclosing information relating to criminal activity. The public corruption reported by Plaintiff not only implicates possible criminal prosecution, but such information should be disclosed to the TEA so the agency can fulfill its statutory obligation to make sure that school districts are properly using federal and state funding for education programs.[109]

The Court further notes that Plaintiff never specifically identifies in the amended complaint the circumstances under which he discovered the suspected public corruption. Without doing so, Plaintiff is unable to demonstrate that he learned about such information outside the context of his employment or that he was somehow speaking as a citizen rather than pursuant to his job duties. As a final note, the Court recognizes the seemingly unjust outcome in this case— disclosing public corruption to the proper authorities results in one's loss of employment. However, the Court believes that outcome is mandated by Supreme Court and Fifth Circuit precedent, and that Texas law provides a remedy. Ultimately, the Court **GRANTS** Defendants'

---

[108] Tex. Educ. Code § 37.081(b).
[109] *Id.* § 7.021(b)(1) (providing that the Texas Education agency "shall administer and monitor compliance with education programs required by federal or state law, including federal and state funding for those programs").

motion to dismiss as to Plaintiff's First Amendment claim, and **DISMISSES THE CLAIM WITH PREJUDICE**.

###### b.    Due Process

"To succeed on a due process claim in the context of public employment, a plaintiff must show that (1) he had a property interest/right in his employment and (2) his termination was arbitrary and capricious."[110] Plaintiff alleges that he had a property interest in "contracted-for employment and compensation"[111] and a liberty interest in "the freedom to work and earn a living."[112] Plaintiff contends that his termination was based on false pretenses, which had a stigmatizing effect on Plaintiff and precluded him from assuming other employment opportunities.[113] The Court will first address Plaintiff's claim that he had a liberty interest, and subsequently consider whether Plaintiff had a property interest.

###### i.    Liberty Interest

"To establish a liberty interest, [a plaintiff] must demonstrate that his governmental employer has brought false charges against him that 'might seriously damage his standing and associations in his community,' or that impose a 'stigma or other disability' that forecloses 'freedom to take advantage of other employment opportunities.'"[114] In reviewing the amended complaint, although Plaintiff explains that the "false reasons" for his termination were publicized,[115] the Court does not find any concrete discussion on "false charges" brought against him. Instead, Plaintiff merely argues that his "termination was not objectively reasonable because the motivation was based on [Plaintiff]'s free speech[,]" and that

---

[110] *Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 263 (5th Cir. 2006).
[111] Dkt. No. 26, at ¶ 5.22.
[112] *Id.* at ¶ 5.21.
[113] *Id.*
[114] *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)).
[115] Dkt. No. 26, at ¶ 5.20.

"the facts and circumstances surrounding Plaintiff's termination clearly show that he was wrongfully terminated in retaliation for derailing Defendants' public corruption."[116] The amended complaint does not provide sufficient support for the claim that Defendants made "false charges" against Plaintiff. Without such support, Plaintiff is unable to demonstrate that a "false charge" by Defendants seriously damaged his reputation in the community or somehow foreclosed other employment opportunities. As a result, Plaintiff is unable to state a liberty interest deprivation.

## ii.    *Property Interest*

"It is well-settled that certain public employment situations may endow an employee with a legally cognizable property interest."[117] "However, a property interest is not incidental to public employment, instead it must be created by an independent source, such as state law."[118] In Texas, a property interest arises in the public employment context "where the public entity has acted to confer, or alternatively, has created conditions which  infer[] the existence of a property interest by abrogating its right to terminate an employee without cause."[119] As such, to determine whether a property interest exists, the Court must inquire into the nature and terms of Plaintiff's former employment with Roma ISD while also considering "the substantive parameters of the relevant state law."[120] Ultimately, "[a] property interest will exist in continued employment if the right to terminate without cause is eliminated. Conversely, an employee who is terminable at will generally has no constitutionally-protected property interest."[121]

---

[116] *Id.* at ¶ 4.26.
[117] *Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003).
[118] *Id.*
[119] *Id.*
[120] *Id.*
[121] *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (citations omitted).

The Court must determine whether Plaintiff's employment with Roma ISD was at-will. Thus, the employment agreement in effect at the time of Plaintiff's termination will control whether Plaintiff had a protected property right in his employment. However, as previously noted, Plaintiff objected to the Court's consideration of the Employment Contract, and the Court sustained that objection. The amended complaint does not provide any contractual language from an employment agreement at the time of Plaintiff's termination. In fact, besides explaining that Plaintiff was "ten-and-a-half-year [] contract employee"[122] and that his contract with Roma ISD was renewed for ten years,[123] there is no evidence supporting that Plaintiff even had a contractual agreement with Roma ISD at the time of his termination or that the terms remained the same as the Employment Contract, which, as already established, the Court is not considering. As a result, Plaintiff has not provided the necessary contractual language specifying that Plaintiff could not be terminated without cause, and is thus unable to establish a protected property interest.

Plaintiff has not demonstrated the deprivation of any protected interest. Since Plaintiff fails to satisfy the first element for a due process claim in the context of public employment, the Court need not analyze whether Plaintiff's termination was arbitrary and capricious. Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's due process claim, and **DISMISSES THE CLAIM WITH PREJUDICE**.[124]

---

[122] Dkt. No. 26, at ¶ 1.1.

[123] *Id.* at ¶ 4.2.

[124] The Court previously noted its concern with the outcome of Plaintiff's First Amendment claim. Here, the Court notes that Plaintiff himself, or his attorney, failed to provide the contract on which this claim is premised.

c.       **Texas Government Code, Chapter 554**

Plaintiff asserts that Roma ISD violated Chapter 554 by retaliating against him for his good faith reporting of a violation of law by Defendants and other school administrators.[125] Chapter 554 provides that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."[126] Defendants argue that Plaintiff's Chapter 554 cause of action is barred by governmental immunity.[127]

"In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether."[128] "Governmental immunity from suit defeats a court's subject matter jurisdiction. In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity."[129] There are specific requirements for waiving immunity. "Sovereign immunity and governmental immunity are common law doctrines, but we have traditionally deferred their waiver to the Legislature . . . . When dealing with these immunities, we have further required the Legislature to express its intent clearly and unambiguously."[130]

The Texas Legislature clearly waives immunity for suits under Chapter 554.[131] Nevertheless, Plaintiff may not pursue his Texas Government Code cause of action in this Court.

---

[125] *Id.* at ¶ 6.2.
[126] Tex. Gov't Code § 554.002(a).
[127] Dkt. No. 27, at p. 46.
[128] *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).
[129] *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (citations omitted).
[130] *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citations omitted).
[131] Tex. Gov't Code § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.").

The Texas Government Code makes clear that "[a] public employee of a state governmental entity may sue under [Chapter 554] in a district court of the county in which the cause of action arises or in a district court of Travis County."[132] The Fifth Circuit has held that Chapter 554 causes of action are actionable in Texas state courts, but not in federal courts.[133] As a result, although Chapter 554 may have provided Plaintiff a remedy, this Court does not have jurisdiction to rule on Plaintiff's Chapter 554 cause of action. Thus, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's Chapter 554 claim, and **DISMISSES THE CLAIM WITHOUT PREJUDICE**.

### d.    Breach of Contract

Plaintiff's remaining cause of action is that Roma ISD's termination of Plaintiff without good cause constitutes a breach of contract.[134] However, in Texas, there is a presumption of at-will employment unless the relationship was expressly altered by the contract, or if there are rules or policies that limit the conditions for an employee's termination.[135] To avoid dismissal, a plaintiff must therefore demonstrate "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[136] As previously explained, Plaintiff has not established the existence of any contractual agreement with Roma ISD at the time of his termination. Plaintiff's failure to do so prevents him from satisfying the first element for a breach of contract cause of action.

---

[132] *Id.* § 554.007(a).

[133] *Martinez v. Tex. Dept. of Criminal Justice*, 300 F.3d 567, 575 (5th Cir. 2002) ("Neither section [(§ 554.0035 or § 554.007)] evidences any intent by Texas to waive its Eleventh Amendment immunity and subject itself to suit in federal courts. In other words, the [Texas Whistleblower] Act waives state sovereign immunity only in Texas state courts. This in the only reasonable construction of the [Texas Whistleblower] Act. We discern no unequivocal expression or overwhelming implication leaving 'no room for any other reasonable construction' in the Texas Whistleblower Act[.]") (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)).

[134] Dkt. No. 26, at ¶¶ 7.1–7.3.

[135] *Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003).

[136] *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's breach of contract claim, and **DISMISSES THE CLAIM WITH PREJUDICE**.

## VI.     Holding

For all the foregoing reasons, the Court **DENIES** the motion for extension of time, **GRANTS IN PART** the motion to strike evidence, **GRANTS** the motion to dismiss, and **DENIES AS MOOT** the remaining motions. All of Plaintiff's claims are hereby **DISMISSED**. A separate final judgment will issue.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 1st day of June, 2017.

_____
Micaela Alvarez
United States District Judge